IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

PARTNERS IN CARE, INC, an Oregon
nonprofit corporation,

        Plaintiff,

   v.

ROBERT F. KENNEDY, JR., in his official
capacity as Secretary of the United States
Department of Health & Human Services,

        Defendant.

Case No. 6:24-cv-00603-MC

OPINION & ORDER

MCSHANE, Judge:

      Plaintiff Partners in Care, Inc., bring this action against Defendant Robert F. Kennedy, Jr., in his official capacity as the Secretary of the Department of Health and Human Services, seeking judicial review of the decision of the Medicare Appeals Council upholding a Medicare Part A audit and overpayment request for Plaintiff's claims paid by Medicare Part A. Compl., ECF No. 1. Plaintiff challenges the Medicare Appeals Council's decision as unsupported by substantial evidence and contrary to applicable law, including the Social Security Act, the Medicare Act, the Administrative Procedures Act, the Medicare Program Integrity Manual, and other agency procedural rules. *Id.* ¶¶ 76–104. Plaintiff also asserts a due process violation invoking the Fifth and Fourteenth Amendments. *Id.* ¶¶ 105–128. Plaintiff filed a Motion for Summary Judgment or

in the Alternative Opening Brief in Support of its Complaint for Judicial Review. Pl.'s Mot., ECF No. 20. Defendant also filed a Motion for Summary Judgment. Def.'s Mot., ECF No. 28.

For the following reasons, Plaintiff's Motion for Summary Judgment (ECF No. 20) and Defendant's Motion for Summary Judgment (ECF No. 28) are GRANTED in part and DENIED in part.

## BACKGROUND

### I.    Medicare Hospice Benefit

Medicare is a federally subsidized health insurance program for the elderly and disabled. The Medicare Hospice Benefit ("Benefit") is a 100% federally subsidized health insurance program under Medicare Part A administered by the Centers for Medicare & Medicaid Services ("CMS") on behalf of the Department of Health and Human Services' ("HHS"). 42 C.F.R. § 418.202. Individuals who are terminally ill with life expectancies of 6 months or less may elect for hospice care under Part A if they also forgo Medicare benefits for the treatment of their terminal illness. 42 C.F.R. § 418.20. The Benefit covers expenses that are reasonable and necessary for the palliation or management of terminal illness, including nursing, social services, physician services, counseling, some inpatient care, medical supplies, home health aide services, and therapy. 42 C.F.R. § 418.202.

For hospice services, an individual is entitled to two 90-day periods of coverage and an unlimited number of subsequent 60-day periods. 42 C.F.R. § 418.21(a). During each period an individual receives hospice care, the hospice must certify that "the individual's prognosis is for a life expectancy of 6 months or less if the terminal illness runs its normal course." 42 C.F.R. § 418.22(b)(1). Among other requirements, the certification must also be accompanied by clinical information and documentation that supports the prognosis, a brief narrative explanation of the

clinical findings by the individual's physician, and the signature of the physician. *Id.* § 418.22(b)(2)–(5).

## II.    Medicare Claim Payment Oversight

### A.    Auditing

Most Medicare claims are paid upfront with no substantive inquiry into the integrity of the claims, as long as there are no glaring irregularities on their face. *United States v. Bergman*, 852 F.3d 1046, 1054 (11th Cir. 2017) (noting fewer than 2% of Medicare claims are reviewed substantively prior to payment); *Popkin v. Burwell*, 172 F. Supp. 3d 161, 166 (D.D.C. 2016) (describing payment of Medicare claims typically made based on "honor system"). CMS uses post-payment audits to assess whether proper payments have been made. CMS contracts with private entities to perform certain functions on its behalf, including claims processing and audits. *See* 42 C.F.R. § 424.5. Medicare Administrative Contractors ("MACs") are private companies contracted to process Medicare claims. If a claim is audited and denied, the MAC reopens its initial claim determination and demands repayment. By regulation, a MAC may, with good cause, reopen and change its initial determination on a claim only within four years of the date of its initial determination. 42 C.F.R. § 405.980(b)(2). The HHS Office of the Inspector General ("OIG") may also perform audits. 5 U.S.C. § 402(b)(1). If the OIG finds that claims have been overpaid, it can make a recommendation to CMS for an overpayment request, after which CMS may issue a demand letter to the provider though a MAC.

Auditors use statistical sampling of claims to audit providers' claims. *See* Use of Statistical Sampling to Project Overpayments to Medicare Providers and Suppliers, Health Care Fin. Admin. Ruling No. 86-1 (Feb. 20, 1986) ("Ruling 86-1"). CMS publishes guidelines for post-payment audits in its Medicare Program Integrity Manual ("MPIM"), which also includes guidance on

statistical sampling methodology and overpayment extrapolation.[1] The auditor begins the sampling process by creating a "universe" of claims, "consist[ing] of all fully and partially paid claims submitted by the provider/supplier for the period under review." MPIM ch. 8, § 8.4.3.2.1. From the universe, the auditor selects a list of "all the possible sampling units from which the sample is selected" to be the "sampling frame." *Id.* § 8.4.3.2.3. The auditor then uses a sampling process to choose the sample from the sampling frame. *See id.* § 8.4.4.1. After the sample is chosen, each claim in the sample is reviewed to determine whether the claim was paid appropriately, underpaid, or overpaid. *See id.* § 8.4.6.3 (requiring auditors to document "the amount of all overpayments and underpayments and how they were determined"). The overpayment rate from the sample results is then extrapolated across the amount paid on the universe of claims to estimate the total overpayment amount for the period under review. *See id.* § 8.2.1.1 ("A projected overpayment is the numeric overpayment obtained by projecting an overpayment from statistical sampling for overpayment estimation to all similar claims in the universe under review."); *id.* § 8.2.3.2.

### B.   <u>Appeals Process</u>

If a provider disagrees with an overpayment demand it may appeal the overpayment determination. There are five levels of appeal within CMS. *See* 42 C.F.R. §§ 405.900–405.1140. First, a provider can request a redetermination by the MAC of its initial overpayment determination. *Id.* § 405.940. At the next step, the provider can request reconsideration by a qualified independent contractor ("QIC"). *Id.* § 405.960. At the third level, if the provider still disagrees with the overpayment request and the amount in controversy is sufficiently high, the

---

[1] Plaintiff seems to suggest that the MPIM guidelines on extrapolation of overpayment estimates are themselves invalid amid its description of the extrapolation process. *See* Pl.'s Mot. 9–10. This is not a claim Plaintiff raises elsewhere or further supports.

provider may request a hearing before an Administrative Law Judge ("ALJ") with the Office of Medicare Hearings and Appeals. *Id.* § 405.1002.

The fourth level of the appeal process allows the provider to request review by the Medicare Appeals Council. 42 C.F.R. §§ 405.902, 405.1100. The Council may deny review. *Id.* § 405.1108(b). If an ALJ decision is in favor of the provider, and neither CMS nor its contractors made an appearance before the ALJ, CMS or its contractors cannot directly request Council review. *See id.* §§ 405.1010(a), 405.1102(d). Alternatively, upon a referral by CMS or its contractors, the Council may decide on its own motion to review a decision of an ALJ when, for instance, the ALJ decision contains an error of law.[2] *Id.* § 405.1110(a). The referral must state the reasons why CMS believes the Council must review the case on its own motion. *See id.* § 405.1110(b)(2). Parties to the ALJ decision may then file exceptions to CMS's referral by submitting written comments to the Council. *Id.* § 405.1110(b)(2).

The Council reviews the ALJ's decision de novo. 42 C.F.R. § 405.1100. The Council "may adopt, modify, or reverse the [ALJ's] decision or dismissal, [or] may remand the case to an ALJ for further proceedings." *Id.* § 405.1110(d). The Council limits its review of the evidence to the evidence contained in the record of the proceedings before the ALJ. *Id.* § 405.1122. When the Council reviews the ALJ's decision, the Council's decision is the final decision of the Secretary. *Id.* § 405.1130.

After the Council's review or denial of review, a provider can seek judicial review in federal district court. 42 U.S.C. § 405(g).

---

[2] On own-motion review, the Council may review the ALJ decision for whether it "contains an error of law material to the outcome of the claim" or "presents a broad policy or procedural issue that may affect the public interest." 42 C.F.R. § 405.1110(c)(2). In addition, if CMS or its contractor were "participants" in proceedings before the ALJ, they may refer the case if the decision "is not supported by the preponderance of evidence in the record" or the ALJ "abused his or her discretion." *See* 42 C.F.R. § 405.1110(c).

### III.    Plaintiff's Audit

Plaintiff Partners in Care, Inc. is a not-for-profit corporation that provides Medicare-covered hospice services in Bend, Oregon. Compl. ¶ 50.

#### A.    Initiating the Audit

On May 30, 2018, OIG informed Plaintiff it would audit a sample of claims related to its hospice services between January 1, 2016, and December 31, 2017. *See* A.R. Vol. 2 at 161. Plaintiff received $27,582,887 in Medicare reimbursement for providing hospice services to 1,670 beneficiaries. *Id.* OIG then requested medical and billing records from Plaintiff pertaining to a "random sample" of 100 claims (for which CMS had paid the Hospice $478,696) out of a universe of 6,379 claims the Hospice submitted to CMS for payment for services provided during the review period. *See id.* at 161. The OIG excluded 600 claims from the sample, including 594 claims that had a payment amount less than $1,000 (including claims for which Plaintiff was paid $0) and six claims that were previously audited by one of CMS's contractors. *See id.* at 161 n.20. Plaintiff provided the OIG with responsive records and the OIG evaluated the sampled claims for "compliance with selected billing requirements and submitted these sampled claims and the associated medical records to an independent medical review contractor to determine whether the services met coverage, medical necessity, and coding requirements." *Id.* at 161.

The OIG informed Plaintiff that 47 of the 100 sampled claims it reviewed did not comply with Medicare requirements. A.R. Vol. 2 at 162. Using extrapolation, the OIG recommended Plaintiff refund "$11,278,891 for hospice services that did not comply with Medicare requirements and that are within the 4-year reopening period." *Id.* at 164. The OIG provided Plaintiff with documentation of the Audit Scope and Methodology, Statistical Sampling Methodology, and Sample Results and Estimates. *Id.* at 173–74, 176–77.

The OIG's recommendation was sent to National Government Services ("NGS"), Plaintiff's MAC, to make a determination, reopen the claims, and issue a demand letter. A.R. Vol. 2 at 4,206–13. On August 16, 2021, NGS issued an overpayment demand letter for $2,286,313 after excluding from the sample all claims that fell outside the four-year reopening period and extrapolating the recalculated error rate over the universe of claims. *Id.*; *see also id.* at 4,296 (explaining 34 of the 47 denied claims in the sample fell outside of reopening period).

### B. Redetermination Request

Plaintiff filed a request for redetermination with NGS on December 9, 2021, seeking review of thirteen denied claims within the reopening period. *See* A.R. Vol. 2 at 3,971-4,200. Plaintiff's request included expert physician statements prepared by board-certified hospice physicians Edward Martin and John Mulder. *See id.* at 4,109–54. It also included a statistical expert report prepared by R. Mitchell Cox. *See id.* at 4,166–201. On March 2, 2022, NGS issued a revised determination upholding its previous statistical sample and denial of claims it had considered. *Id.* at 4,215–50.

### C. Request for Reconsideration by QIC

On July 28, 2022, Plaintiff filed a request for reconsideration with C2C Innovative Solutions, Inc., a QIC. Compl. 59; A.R. Vol. 2 at 8. The reconsideration request included updated physician clinical summaries prepared by Dr. Martin and Dr. Mulder. *See* A.R. Vol. 2 at 3,769–822. It also included an expert report by Dr. Cox responding to NGS's statistical analysis in the redetermination decision. *See id.* at 3,876–77. On September 27, 2022, the QIC issued a reconsideration decision with a favorable finding for Plaintiff on one claim, a partially favorable finding on one claim, and upholding the denial of the remaining eleven claims. *Id.* at 3,901, 3,931.

### D. ALJ Review and Decision

The Hospice filed a timely request for hearing before an ALJ, seeking review of the extrapolation and its twelve denied claims. *See* A.R. Vol. 2 at 107. The issues before the ALJ were: (1) Whether Medicare Part A covers the hospice services provided to the Beneficiaries on the dates of service at issue; (2) If Medicare does not cover the hospice services, then who is financially responsible for the non-covered services and resulting overpayment; (3) Whether the extrapolated overpayment is based on a valid statistical sampling methodology. *Id.* at 8–9. Plaintiff submitted a position statement containing written testimony from Plaintiff's medical director, associate medical director, and statistical analysis by Dr. Cox. *See id.* at 4,490–501, 4,511–25.

On June 21, 2023, Plaintiff's representatives and counsel appeared for a hearing before ALJ Eli Bruch. A.R. Vol. 2 at 8. CMS and its contractors did not appear. *Id.* at 4,630. At the hearing, Plaintiff presented testimony from Dr. Cox as well as its physicians and management employees. *Id.* at 8.

On September 13, 2023, the ALJ issued a decision. *See generally* A.R. Vol. 2 at 1–78. The ALJ invalidated the statistical sampling and subsequent extrapolation because of the "inclusion of claims beyond the regulatory reopening period in the universe of claims, the lack of sufficient documentation to replicate the sample pull, and a definition of the universe that does not conform to allowable standards." *Id.* at 27–28. The ALJ also overturned the denial of eight claims Plaintiff had filed, indicating Plaintiff was only financially responsible for the four claims adjudicated as unfavorable to Plaintiff. *Id.* at 46–47.

**E.  Council Review and Decision**

On November 14, 2023, CMS referred ALJ decision to the Council requesting own-motion review based on errors of law material to the outcome. A.R. Vol. 1 at 4; 42 C.F.R. § 405.1110. Plaintiff filed exceptions to CMS's referral. A.R. Vol. 1 at 4. On February 9, 2024, the Council

issued a Notice of Own Motion Review and Decision. *Id.*

      The Council reversed the ALJ's decision to invalidate the statistical sampling and extrapolation on each basis supplied by the ALJ and vacated the ALJ's decision for one beneficiary. A.R. Vol. 1 at 4. The Council, in reviewing the factual record, found the statistical sampling and extrapolation methodology was valid, rejecting the ALJ's reasons for invalidating the statistical sampling and extrapolation methodology. *See id.* at 10–12. The Council first found there was evidence in the record to replicate sample selection. *Id.* at 10–11. The Council noted that the entirety of the record beyond only the "sampling plan" contained "information sufficient to recreate the sampling frame." *Id.* Next, the Council found the OIG had complied with the MPIM in constructing the universe of claims by including all "fully and partially paid claims submitted by the provider/supplied for the period under review." *Id.* at 11–12. In this case, that meant "hospice claims provided by [Plaintiff] with a date range of January 1, 2016, through December 31, 2017." *Id.* at 11. Last, the Council found the OIG also complied with the MPIM when it excluded claims paid under $1,000 from the sampling frame. *Id.* at 12.

      Meanwhile, the Council upheld the ALJ's remaining decisions in favor of the validity of the statistical sampling and extrapolation. *See* A.R. Vol. 1 at 12–15. Both the ALJ and the Council rejected Plaintiff's arguments, "(1) that 'OIG's sample is so feeble that it invalidates the sampling and extrapolation;' (2) that the sampling unit used was inconsistent; (3) that the removal of all zero-paid claims biased the estimate toward overpayments; and (4) that the 'OIG has not shown that it ever conducted a determination of whether a high level of payment error exists, barring extrapolation.'" *Id.* at 12–13. In addition, the Council found "no merit" in Plaintiff's "contention that the government wrongly demanded repayment for services that are otherwise payable by Medicare under Part B or D and that the overpayment failed to adjust for the amount Medicare

otherwise would be able to pay when the beneficiary is placed in hospice care." *Id.* at 14.

### F. **Judicial Review**

After the Council's issued its decision, CMS requested a recalculated overpayment sum of $234,598.00 from Plaintiff. *See* Compl. Ex. B at 3, ECF No. 1-3. This calculation removed claims beyond the four-year reopening period from the initial universe of claims. *See id.* at 3–5. On April 9, 2024, Plaintiff filed this action requesting judicial review of the Council's decision. *See generally* Compl. ¶¶ 76–104. Plaintiff also alleges Defendant violated Plaintiff's due process rights. *Id.* ¶¶ 105–28.

## **LEGAL STANDARD**

### I. **42 U.S.C. 405(g) Standard**

The Court reviews the Secretary's final decision according to the standards set forth in 42 U.S.C. 405(g) (incorporated by reference in 42 U.S.C. 1395w-22(g)(5)). *Conahan v. Sebelius*, 659 F.3d 1246, 1249 (9th Cir. 2011). Judicial review of the Secretary's final decision is limited to whether the final decision comports with applicable law and is supported by substantial evidence. *See* 42 U.S.C. § 1395ff(b) (incorporating 42 U.S.C. § 405(g)). This review is limited to the administrative record. *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000).

The Secretary's findings of fact shall be conclusive and must be upheld if supported by substantial evidence. 42 U.S.C. § 405(g); *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (internal quotation omitted). Whether substantial evidence supports a finding is determined from the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Secretary's

conclusion. *Id.* When the evidence can rationally be interpreted in more than one way, the court must uphold the Secretary's decision. *Id.* Finally, the Court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys, Inc.*, 419 U.S. 281, 286 (1974). The Court reviews administrative questions of law, including interpretation of a statute, *de novo*. *Reynoso-Cisneros v. Gonzales,* 491 F.3d 1001, 1002 (9th Cir. 2007).

Pursuant to 42 U.S.C. § 405(g), the "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing."

## II.    **Summary Judgment Standard**

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing administrative proceedings, the Court is not required to resolve any factual issues. *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). The Court does not make credibility determinations or weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When parties file simultaneous cross-motions for summary judgment on the same claims, the Court "must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001); *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (the district court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard" (cleaned up)).

## **DISCUSSION**

Plaintiff's Motion seeks judicial review of the Council's decision and summary judgment on its claim that the OIG's sampling and extrapolation violated its constitutional due process rights.

## I.  Review of Council Decision

Plaintiff challenges the scope of the Council's decision. Pl.'s Mot. 21. In particular, the parties dispute whether the sufficiency of documentation to recreate a sample is a question of law, or a question of fact, precluding the Council's review. *Id.* at 23–24. The Council may review a decision or dismissal issued by an ALJ on its own motion. 42 C.F.R. § 405.1110(a). When CMS does not participate in the hearing before the ALJ, "[t]he Council will accept review if the decision or dismissal contains an error of law material to the outcome of the case or presents a broad policy or procedural issue that may affect the general public interest." *Id.* § 405.1110(c)(2). This scope of review does not cover factual issues. *See id.* §§ 405.1110(b)(1), (c)(2). The "wholesale disregard, misapplication, or failure to recognize controlling precedent" constitutes a material error of law in this context. *Aloi v. Azar*, 337 F. Supp. 3d 105, 108–09 (D.R.I. 2018). The parties do not argue there is broad policy or procedural question at issue.

In this case the Council determined the ALJ erred by misinterpreting MPIM ch. 8, § 8.4.4.4.1 as requiring all information necessary to recreate the sampling to be contained in the "sampling plan" portion of documentation. A.R. Vol. 1 at 10–11. Instead, the Council explained, the MPIM requires documentation "be kept in sufficient detail so that the sampling frame can be re-created should the methodology be challenged," looking to the entire record. *Id.* (quoting MPIM ch. 8, § 8.4.4.4.1). The Council applied this interpretation to the record and validated the sample. *Id.* Plaintiff argues the question of whether an auditor has provided documentation sufficient to re-create the sample is a question of fact, which the Council should not have been able to consider on its own-motion review. Pl.'s Mot. 24. Defendant argues the Council properly considered a question

of law, because the Council determined that the ALJ made a legal error by misinterpreting MPIM ch. 8, § 8.4.4.4.1 and reversed on that basis alone. Def.'s Resp. 2–3, ECF No. 29; Def.'s Reply 4, ECF No. 32.

The Court does not adopt the position that all questions regarding the application of MPIM statistical sampling and extrapolation guidelines are necessarily questions of law. *See, e.g.*, *Methodist Healthcare Memphis Hosps. v. Becerra*, 2022 WL 4587170, at \*4-5 (W.D. Tenn. Sept. 29, 2022). The *Methodist Healthcare* court found an ALJ's findings that shortcomings in an audit's methods invalidated extrapolation involved a question of fact, noting "[a] post-payment audit's failure to conform with the MPIM guidelines does not necessarily affect the validity of sampling or extrapolation." *Id.* Therefore, because the "magnitude" of a departure from the guidelines was relevant to the validity of the sample at issue, determining the sample's validity raised a question of fact. *Id.* (citing *Maxmed Healthcare, Inc. v. Price*, 860 F.3d 335, 341 (5th Cir. 2017)).

Here, though the Council addressed the interpretation of MPIM ch. 8, § 8.4.4.4.1, it did not stop there. The Council examined the files in the record and stated, "MPIM requires sufficient documentation to 'replicate the sample selection,' and the appellant has not demonstrated why such replication is not possible based on this, and other, worksheets in the record." A.R. Vol. 1 at 10–11. The Council's ultimate determination by its own terms relied on the evidence; it is unclear how the ALJ at first, and the Council on review, could determine the validity of the sample under the circumstances here without weighing facts.[3] *Cf. Methodist Healthcare*, 2022 WL 4587170, at \*5 ("[I]t is unclear how an ALJ could determine whether or not any sample was 'repeatable' or

---

[3] Defendant also argues the Council did not consider a question of fact because CMS and QIC were both able to recreate the sample using the audit documentation, implying the ALJ could only have reached his decision by misinterpreting the regulations. Def.'s Reply 4–5; Def.'s Resp. 2–3. However, the mere fact CMS and QIC were both able to recreate the sample based on the record reinforces the factual nature of the question of sample validity here. S*ee* A.R. Vol. 1 at 10–11. This argument is also unconvincing because it takes too limited a view of the purpose of requiring sampling documentation; documentation allows the agency to validate the integrity of the sampling *process*, not just the individual sample itself. *See, e.g.*, Pl.'s Mot. 26–27; A.R. Vol. 2 at 27.

whether the contractor had utilized a 'known' number of samples without weighing any evidence."); *LivinRight, Inc. v. Azar*, 386 F. Supp. 3d 644, 654–56 (E.D. Va. 2019) (describing facts from record considered in reaching conclusion sample could be recreated). Accordingly, the Council decided a question of fact when it reversed the ALJ's decision. This is an error in the Council's decision upholding the OIG's extrapolation and the ALJ's factual findings are therefore properly considered as the Secretary's final factual findings to be reviewed by the Court. 42 C.F.R. § 405.1048(a).

Having determined the Council erred, the Court also finds rehearing before the ALJ is not required upon remand in this case. 42 U.S.C. § 405(g). First, to the extent the Council decided a question of law, it held the requirements of MPIM ch. 8, § 8.4.4.4.1 that "[a]n explicit statement of how the universe is defined and elements included shall be made and maintained in writing" and that "[d]ocumentation shall be kept in sufficient detail so that the sampling frame can be recreated, should be methodology be challenged," do not require that the "sampling plan" itself contain the entirety of the required information, as opposed to the record as a whole. A.R. Vol. 1 at 10. The Court's review of the ALJ decision indicates the ALJ did consider the record as a whole. *See* A.R. Vol. 2 at 27 ("[T]he record presents no evidence of the variable or methodology used by the OIG to determine the sort order of the sample frame."). In particular, the ALJ recognized "[t]he record includes the random number seed, but only with the final results of the sampling frame," and acknowledged the OIG "indicate[d] that the source of the random numbers [was] the RAT-STATs software, and its built-in random number generator." *Id.*; *see also* A.R. Vol. 1 at 11 (considering same parts of the record). Then, based on this record, the ALJ determined as to these "crucial components," "[w]ithout [the sort order], the sampling frame cannot be recreated using the same steps as the OIG," and when the random seed is only apparent in results from statistical

software, "[it] is insufficient to re-create this statistical sample perfectly." A.R. Vol. 2 at 27.

The ALJ's decision on the record was supported by substantial evidence. Plaintiff argues that the ALJ correctly found that the sampling frame spreadsheet is insufficient documentation of the sampling process because the sampling process is only meaningful when the auditor chooses its sampling parameters in advance and the record did not confirm this was the case. Pl.'s Mot. 26–27. Defendant maintains that "prospective documentation" is not required and MPIM ch. 8, § 8.4.4.4.1 has no "chronological requirement." Def.'s Reply 7. In his decision, the ALJ considered testimony from Plaintiff's statistical expert Dr. Cox, explaining that to accept there was sufficient documentation as to the sort order and random seed in the record would imply "documentation sufficient to recreate the sample is provided by the sample itself and that nothing else is needed to establish its statistical validity." *See* A.R. Vol. 2 at 4,646–50. The ALJ adopted this view to conclude "the results themselves cannot serve as the basis to recreate those results." *Id.* at 27. Without imposing any "chronological" or "prospective" requirements, the Court finds the ALJ's conclusion, considering the totality of the relevant record, is a reasonable one. This is sufficient upon review for substantial evidence. Accordingly, in light of the standard set out by the Council, the ALJ's conclusion that "the sampling documentation is not sufficiently detailed to replicate the sampling as performed by the OIG" is upheld. *Id.*

Rehearing before the ALJ is therefore unnecessary. The Court reverses the Council's decision and reinstates the ALJ's decision invalidating the sample for insufficient documentation. Because the Court reinstates the ALJ's decision on this issue, the request for overpayment based on extrapolation is invalid and Plaintiff is accorded complete relief. The Court need not address Plaintiff's remaining challenges to the Council's decision.[4]

---

[4] The Court also finds no merit to Plaintiff's argument that potential payments under Medicare Part B or Part D should have been considered when calculating its overpayment amount. Pl.'s Mot. 39–40. The Council noted it was

## II.    <u>Due Process Claim</u>

Plaintiff argues the statistical sampling and extrapolation performed by the OIG violated its procedural due process rights under the U.S. Constitution. Plaintiff asserts it had a protected property interest in "legitimate" Medicare payments, and it was denied adequate procedural protections by the statistical sampling and extrapolation performed in this audit. Pl.'s Mot. 40–41; *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–71 (1972)). Plaintiff argues that the deficiencies alleged in the Complaint constituted denials of constitutional procedural protections. *See* Pl.'s Mot. 41–42. Defendant emphasizes that the Constitution sets a floor for due process and does not mandate any specific process or entitle Plaintiff to its preferred process. Def.'s Mot. 37–39.

Constitutional procedural due process protections require an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation and internal quotation omitted). The use of statistical sampling and extrapolation in the review process for Medicare claims does not deny a provider due process so long as the provider has the opportunity to challenge sample findings, and the statistical methods are valid. *Ratanasen v. Cal. Dep't of Health Servs.*, 11 F.3d 1467, 1471 (9th Cir. 1993) (finding overwhelming government interest in Medicare's use of statistical sampling and approving "the use of sampling and extrapolation as part of audits in connection with Medicare . . . provided the aggrieved party has an opportunity to rebut such evidence"); *Chaves Cnty. Home Health Serv., Inc. v. Sullivan*, 931

---

"unclear . . . how such an offset would be applicable in the statistical sampling overpayment context" in the absence of authority showing overpayment must be offset by amounts "*potentially* payable under Medicare Part B or Part D had the beneficiary/enrollee not elected hospice care." A.R. Vol. 1 at 15 (emphasis added). Plaintiff's patients were not covered by Medicare Part B or Part D for hospice services provided by Plaintiff. *See* 42 C.F.R. § 418.202. Indeed, because Plaintiff's patients opted for hospice care from Plaintiff, they became ineligible for Medicare Part B or Part D coverage. 42 U.S.C. § 1395d(2)(A). Plaintiff's argument explicitly contemplates that Medicare Part B and Part D do not apply to its claims, and the Council was correct to reject Plaintiff's argument that its overpayment should be adjusted by amounts not actually payable on Plaintiff's claims. Pl.'s Mot. 39. In light of applicable law governing payment for Plaintiff's hospice services, the Council's decision was supported by substantial evidence.

F.2d 914, 916–18 (D.C. Cir. 1991).

Plaintiff was afforded due process here. Plaintiff specifically identifies the lack of sampling documentation provided by the OIG as a due process violation. Pl.'s Mot. 41–42 & n.5. An auditor's failure to provide sufficient details about the sampling procedure can deny a provider due process when it deprives the provider of a full chance to challenge the audit methodology before the agency. *See* MPIM ch.8, § 8.4.4.4; *Chaves,* 931 F.2d at 922–23. The backdrop of the proceedings in this case indicate Plaintiff had adequate documentation and information to challenge the OIG's sampling methodology. Plaintiff had multiple layers of process prior to seeking judicial review, including hearings before an ALJ and the Council; Plaintiff's case saw the ALJ and Council reach different decisions on the merits and adequacy of documentation, informed by Plaintiff's briefing, statistical expert report, and the record. *See* A.R. Vol. 2 at 27; A.R. Vol. 1 at 10–11. Neither the ALJ nor the Council found or discussed a due process violation in this regard. *See* A.R. Vol. 2 at 27; A.R. Vol. 1 at 10–11. Indeed, the due process issue is distinct from whether the Council's or the ALJ's decisions regarding documentation provided by the OIG were supported by substantial evidence.[5] *See Pruchniewski v. Leavitt*, 2006 WL 2331071, at *13 (M.D. Fla. Aug. 10, 2006). While Plaintiff maintains that the OIG's documentation was insufficient to *recreate* the sample, Plaintiff had a "meaningful opportunity" to *challenge* the sampling methodology. *Chaves,* 931 F.2d at 922 (citing *Mathews*, 424 U.S. at 335). Because only the latter is required by the due process "floor," Plaintiff not established a due process violation. *Pruchniewski*, 2006 WL 2331071, at *13.

Plaintiff's remaining alleged due process violations go to the substance of the ALJ's and Council's decisions regarding the audit. *See* Pl.'s Mot. 41–42 (listing challenges). Plaintiff's

---

[5] As discussed *supra*, the Court makes no such finding here.

remaining challenges do not raise procedural deficiencies—Plaintiff does not have a due process right to the particular manner in which the audit was conducted or reviewed. *See Erickson v. United States*, 67 F.3d 858, 863 (9th Cir. 1995) (holding post-audit hearing satisfies constitutional due process protections in Medicare overpayment context). In fact, these challenges are more accurately understood as the result of the process Plaintiff received: a hearing where an ALJ heard testimony, received evidence, and issued findings and determinations, followed by review by the Council. *See Chaves,* 931 F.2d at 915–16, 922–23 (finding no violation of the plaintiff's procedural due process rights when it was determined the plaintiff was overpaid using a statistical sample estimate). Plaintiff disagrees with aspects of the ALJ's and Council's decisions, but throughout the proceedings before the agency, Plaintiff unquestionably had the opportunity to contest the methods of statistical sampling and extrapolation applied to its claims to "demonstrate that the overpayment determination is wrong." *See* Ruling 86-1. As to these remaining challenges, Plaintiff has also not established a due process violation.

Drawing all inferences in favor of Plaintiff, Plaintiff has not established a due process violation and is not entitled to judgment as a matter of law. The Court grants summary judgment for Defendant and denies summary judgment for Plaintiff on Plaintiff's due process claims.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 20) and Defendant's Motion for Summary Judgment (ECF No. 28) are GRANTED in part and DENIED in part as follows.

The Court reverses the Council and upholds the ALJ's finding that the statistical sampling methodology is invalid. Plaintiff is financially responsible for the non-covered services and resulting overpayment. Plaintiff is not responsible for any extrapolated overpayment and is

responsible only for those individual claims with unfavorable findings. A.R. Vol. 2 at 46–47; A.R. Vol. 1 at 15–16. The Court remands to CMS for proceedings consistent with this decision. 42 C.F.R. § 405.1138.

The Court grants summary judgment for Defendant on Plaintiff's constitutional due process claim. Plaintiff's due process claim is dismissed with prejudice.

IT IS SO ORDERED.

DATED this <u>3rd</u> day of December 2025.

<u>s/ Michael McShane</u>
Michael J. McShane
United States District Judge